Rex Bagley
Mailing Address:
42 N 4125 W
Cedar City, UT 84720
(435)754-6890

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

OCT 03 2013

D. MARK JONES, CLERK

BY_____
DEPUTY CLERK

RECEIVED CLERK

OCT 0 2 2013

U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

for the

DISTRICT OF UTAH

| | |
|---|---|
| REX BAGLEY, : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> : <br> WEST VALLEY CITY, WEST VALLEY : <br> POLICE DEPT., MIKE WINDER, ANITA : <br> SCHWEMMER, MARTHA STONEBROOK, : <br> MARIO AGUILERA, THOMAS SANFORD, : <br> SADAT SIRIPATHANE, ERIC BUNDERSON, : <br> WAYNE PYLE, RACHEL WHITE, TERESA : <br> TATE, BARBARA HOLTRY, GARY ELSON : <br> JERRY TALBOTT, ESMERALDA MARTINEZ, <br> and JOHN DOE, : <br>     Defendants. : | PLAINTIFF COMPLAINT AND DEMAND <br> FOR JURY TRIAL <br><br> ———————————————————— <br> Case: 2:13-cv-00897 <br> Assigned To : Stewart, Ted <br> Assign. Date : 10/2/2013 <br> Description: Bagley v. West Valley <br> City et al |

1. At all times hereinafter mentioned, plaintiff was and still is a resident of the State of Utah - Salt Lake County.

2. At all times hereinafter mentioned, plaintiff was a resident of West Valley City, Utah.

3.

    a. Defendant West Valley City (hereinafter referred to as "WVC") is a municipal corporation of Salt Lake County having its principal place of business located at: 3600 South Constitution Blvd., West Valley City, Utah 84119.

    b. Defendant West Valley Police Department (hereinafter referred to as "WVPD") is a department of WVC having its principal place of business located at: 3575 S Market St, West Valley City, Utah 84119.

    c. Defendant Mike Winder, at all times hereinafter mentioned, is an individual whom was and still is the Mayor of WVC.

d. Defendant Anita Schwemmer, at all times hereinafter mentioned, is an individual whom was the Acting Chief of Police for the WVPD.

e. Defendant Eric Bunderson, at all times hereinafter mentioned, is an individual whom was and still is a City Attorney for WVC.

f. Defendant Wayne Pyle, at all times hereinafter mentioned, is an individual whom was and still is the City Manager of WVC.

g. Defendant Martha Stonebrook, at all times hereinafter mentioned, is an individual whom was and still is the Assistant City Attorney of WVC.

h. Defendant Rachel White, at all times hereinafter mentioned, is an individual whom was and still is the Risk Manager of WVC.

i. Defendant Teresa Tate, at all times hereinafter mentioned, is an individual whom was and still is the Workers Compensation Specialists of WVC.

j. Defendant Barbara Holtry, at all times hereinafter mentioned, is an individual whom was and still is the Administrative Assistant of WVC.

k. Defendant Gary Elson, at all times hereinafter mentioned, is an individual whom was and still is a police officer for WVPD.

l. Defendant Mario Aguilera, at all times hereinafter mentioned, is an individual whom was and still is a police officer for WVPD.

m. Defendant Thomas Sanford, at all times hereinafter mentioned, is an individual whom was and still is a police officer for WVPD.

n. Defendant Sadat Siripathane, at all times hereinafter mentioned, is an individual whom was and still is police officer for WVPD.

o. Defendant Jerry Talbott, at all times hereinafter mentioned and relevant to the claims outlined in this complaint, is an individual whom was the controlling property owner ("landlord") and co-beneficiary of the trust holding the property located at 2512 W Starling Ave, West Valley City, UT 84119, doing business in West Valley City, and a resident of Salt Lake County.

p. Defendant Esmeralda Martinez, at all times hereinafter mentioned and relevant to the claims outlined in this complaint, is an individual whom was a co-tenant at the property located at 2512 W Starling Ave, West Valley City, UT 84119 and a resident of Salt Lake County.

q. Defendant John Doe (known only as Reuben and reportedly the father of Esmeralda Martinez's children), at all times hereinafter mentioned and relevant to the claims outlined in this complaint, is an individual whom was a co-tenant at the property located at 2512 W Starling Ave, West Valley City, UT 84119 and a resident of Salt Lake County.

r. The jurisdiction of this court is invoked pursuant to 42 U.S.C. § 1983.

4. STATEMENT OF RELEVANT FACTS.

a. Plaintiff entered into a sublease agreement ("lease agreement") with defendant

2

Esmeralda Martinez (hereinafter referred to as "Martinez") and her boyfriend defendant John Doe (hereinafter referred to as "Doe") for the exclusive use of a room and the shared use of the common areas at the home located at 2512 W Starling Avenue, West Valley City, UT 84119 ("the property") on or about March 1, 2013.

b. The lease agreement was secured by a deposit in the amount of $50 as well as monthly rent in the amount of $350.

c. Plaintiff was current on his rent when Martinez and Doe moved all of their belongings, with the exception of some odds and ends left in the basement, out of the property on or about June 29, 2013.

d. Prior to July 1, 2013, plaintiff had not been served by any of the defendants with any written notice(s) regarding an eviction or any changes in his tenancy by Utah law.

e. On or about July 1, 2013, defendant Jerry Talbott (hereinafter referred to as "Talbott") attempted to have the plaintiff removed from the property for squatting by the WVPD.

f. On July 1, 2013, plaintiff was personally served with a Five Day Notice To Vacate ("eviction notice") by Talbott.

g. Following the service of the eviction notice by Talbott, both Martinez and Doe visited the property, even entering the home with a key, and removed items from the property without providing the plaintiff with any prior notice. Also, the power and gas utilities were subsequently shut off and locked out, as well as, a rock was thrown the plaintiff's window which resulted in a 911 call by the plaintiff to the WVPD to which Sadat Siripathane ("Siripathane") responded.

h. Prior to the rock being thrown through the plaintiff's window, on or about July 2, 2013, plaintiff emailed a complaint to Mike Winder, the Mayor of WVC, regarding several calls to the WVPD regarding possible criminal activity being perpetrated against the plaintiff and WVPD's failure to investigate these allegations. In the email plaintiff alleged possible official misconduct by officers of the WVPD, as well as, expressed his general lack of confidence in the WVPD.

i. On or about July 3, 2013, plaintiff was notified by several WVPD police officers at the WVPD main office that a meeting between several top city officials, the chief of police, Talbott, and Talbott's attorney took place and following that meeting it was determined that the plaintiff was not to return to the home, and if he did, he was told, he would be arrested for trespassing. Plaintiff also received an email dated that same day from Acting Police Chief Anita Schwemmer, operating under the directions of Mayor Mike Winder, verifying what the plaintiff had been told by the officers. Plaintiff later that evening met with a defendant Lt. Gary Elson of the WVPD who confirmed that he was not to return to the home or he would be arrested for trespassing. Plaintiff and Lt. Elson argued over the landlord-tenant laws in Utah for some time until Lt. Elson went back into the WVPD offices to later return and inform plaintiff that he had spoken with Talbott who had stated that he would allow plaintiff to return to the home and pick up some items.

3

Plaintiff then solicited the assistance of a nearby WVPD patrol officer to accompany him to the home while he gathered some items, as well as, to provide him with a case number regarding the trespassing order. The officer complied and while at the property defendant Siripathane arrived at the home and informed the plaintiff that a new agreement had been reached between WVPD and Talbott that would allow him to stay in the home until 5:00 PM, "and not a minute more" the officer said, on July 5, 2013, at which point he would be arrested for trespassing if he was caught on the property. Plaintiff, having been threatened by WVPD with unlawful action and lacking confidence in the WVPD to respond to plaintiff's calls which were likely to come given the escalating level of criminal behavior being perpetrated against him, gathered as many items as he could carry in a backpack and left the home to stay in a hotel. Once at the hotel, potential witnesses to the rock being thrown through plaintiff's bedroom window were found occupying the hotel room immediately adjacent to the plaintiff's room. Plaintiff then changed his room.

j.   On or about July 5, 2013, plaintiff returned to the home after securing a moving truck to retrieve his property from the property. Prior to returning to the property plaintiff contacted WVPD dispatch at approximately 3:10 PM to accompany him to the home so he could retrieve his property. WVPD dispatch instructed him to go to a location two blocks away from the home and await the arrival of a WVPD officer. WVPD dispatch finally contacted plaintiff via telephone, after numerous calls to dispatch regarding the ETA of an officer, at around 4:40 PM stating that an officer was at the property awaiting plaintiff's arrival. When plaintiff arrived at the property defendants Thomas Sanford ("Sanford") and Mario Aguilera ("Aguilera") were waiting as was Talbott who was waiting inside the home. Officer Sanford informed plaintiff that he had until 5:00 PM to remove his property and leave or he would be arrested. Officer Sanford also stated that any property that plaintiff was unable to retrieve within the specified time would be considered abandoned. Plaintiff argued that he was not abandoning any of his property and that he was only crunched for time to retrieve his property as a result of WVPD's failure to respond to his call. Officer Sanford responded stating that plaintiff had had two days, one of those days being July 4th, to remove his property from the property and plaintiff's failure to manage his time properly was not his problem. Plaintiff requested additional time from Talbott who refused. Plaintiff then removed as many items of his property from the home as he could until his body succumbed to the heat (approximately 96 degrees that day) and exhaustion. Medical was dispatched to the property who checked the plaintiff's vital signs and then released him. Plaintiff was refused water from the home by defendant's Sanford and Aguilera without the prior approval from Talbott. Once plaintiff recovered enough to continue packing his items into the moving truck he was repeatedly threatened with arrest by the defendants Sanford and Aguilera if he did not leave. Plaintiff, in his

attempts to retrieve his property from the home and avoid an unlawful arrest and/or become the victim of yet another crime that would be ignored by the WVPD attempted to retrieve his property from the property but ultimately was unable to accomplish this in the timeframe that would have allowed him to avoid the result of the threats made against him, and he lost a great deal of property as a result.

k.  Plaintiff had both constitutional and statutory rights to due process in the form of the eviction process prior to being removed from the property.

l.  Plaintiff was denied this right under both direct and indirect threats of force made against him by the defendants, collectively and individually, in this case.

m.  WVC and those employed by WVC have a statutory duty to uphold the laws of the State of Utah. Failure to do so carries the possibility of both criminal and civil penalties.

n.  WVPD and those employed by WVPD have a statutory duty to uphold the laws of the State of Utah. Failure to do so carries the possibility of both criminal and civil penalties.

o.  WVC and WVPD and those employed by WVC and WVPD have a statutory duty to intervene when there is a failure by a public official to uphold the laws of the State of Utah. Failure to do so carries the possibility of both criminal and civil penalties.

p.  Talbott, Martinez, and Doe have a statutory duty to follow the eviction process in order to have a tenant/subtenant removed from the property, and are strictly prohibited by law from engaging in activities that will result in the constructive eviction of a tenant/subtenant.

q.  Each defendant knowingly and maliciously worked in concert together to cause the specific violations of plaintiff's constitutional and statutory rights forming the specific allegations of this complaint and damages claimed thereunder.

5. WHEREFORE, plaintiff demands:

1.  For Conspiring to Commit the Crime of False Imprisonment/Kidnapping
    a.  Money damages in the amount of                          $ _____
    b.  Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

2.  For Conspiring to Commit the Crime of Racketeering
    a.  Money damages in the amount of                          $ _____
    b.  Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

3.  For Conspiring to Commit the Crime of Armed Robbery/Assault With A Deadly Weapon
    a.  Money damages in the amount of                          $ _____

    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

4. For Conspiring to Commit the Crime of Obstruction of Justice

    a. Money damages in the amount of                $ _____

    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

5. For Conspiring to Commit the Crime of Official Misconduct

    a. Money damages in the amount of                $ _____

    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

6. For Conspiring to Commit the Intentional Tort of Theft By Conversion

    a. Money damages in the amount of                $ _____

    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

7. For Conspiring to Commit the Intentional Tort of Intentional Infliction of Emotional Distress

    a. Money damages in the amount of                $ _____

    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

8. For Conspiring to Commit the Intentional Tort of Trespass to Chattels

    a. Money damages in the amount of                $ _____

    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

9. For Conspiring to Commit the Intentional Tort of Abuse of Process

    a. Money damages in the amount of                $ _____

    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff

personally or professionally.

10. For Conspiring to Commit the Intentional Tort of Breach of Contract
    a. Money damages in the amount of                    $ _____
    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

11. For Conspiring to Commit the Intentional Tort of Breach of the Implied Covenant of Good Faith and Fair Dealings
    a. Money damages in the amount of                    $ _____
    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

12. For Conspiring to Commit the Intentional Tort of Breach of the Implied Covenant of Quiet Enjoyment
    a. Money damages in the amount of                    $ _____
    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

13. For Conspiring to Commit the Intentional Tort of Invasion of Privacy
    a. Money damages in the amount of                    $ _____
    b. Permanent injunction against the defendants or any associates of the defendant's from entering a proximity within 15 miles of the plaintiff, the plaintiff's family, the plaintiff's friends, the plaintiff's acquaintances, or any other person related to the plaintiff personally or professionally.

14. Any further relief which the court may deem appropriate.

DATE: ___2___ of ___OcT___, 2013.

Rex Bagley, Plaintiff, *pro se*
ADDRESS: 42 N 4125 W CEDAR CITY, UT 84720
TEL: 435-754-6890